UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Yoandy Fernandez-Morales,[1]

    Plaintiff

v.

Benedicto Gutierrez & Henry Landsman,

    Defendants

Case No. 2:20-cv-00679-CDS-EJY

**Order Granting Defendants' Motion for Summary Judgment, Denying as Moot Motion for Judicial Action, and Closing Case**

[ECF Nos. 58, 69]

    Pro se plaintiff Yoandy Fernandez-Morales, an inmate incarcerated at Southern Desert Correctional Center (SDCC), brings this civil-rights action against former SDCC Director of Nursing Benedicto Gutierrez and Dr. Henry Landsman for their alleged deliberate indifference to his medical needs. Fernandez-Morales, a native Spanish speaker, asserts that the defendants failed to properly diagnose and treat him because they refused to provide him with an interpreter and misunderstood him during medical appointments, violating the Eighth Amendment. The defendants move for summary judgment on Fernandez-Morales's claims. Because there is no genuine dispute that Gutierrez was uninvolved in Fernandez-Morales's treatment, I grant him summary judgment. And because there is no genuine dispute that Dr. Landsman was not deliberately indifferent to Fernandez-Morales's medical needs, I grant summary judgment in Dr. Landsman's favor as well. With no surviving claims, I instruct the Clerk of Court to enter judgment accordingly and close this case.

---

[1] The record is unclear whether his name is hyphenated. The docket shows his name as "Fernandez Morales," but he appears to mostly use "Fernandez-Morales" in his filings. *See, e.g.*, ECF No. 63. And the defendants refer to him simply as "Fernandez." *See, e.g.*, ECF No. 58 at 1. For consistency, I refer to him throughout this order as "Fernandez-Morales."

I. Background

Fernandez-Morales sues the defendants for violations of the Eighth Amendment. Am. Compl., ECF No. 26 at 4. Magistrate Judge Elayna J. Youchah screened Fernandez-Morales's complaint under 28 U.S.C. § 1915(e)(2) and permitted him to proceed with two claims against both defendants: (1) an Eighth Amendment deliberate-indifference-to-medical-needs claim based on the defendants' provision of allegedly improper medical treatment and (2) an Eighth Amendment deliberate-indifference-to-medical-needs claim based on the defendants' failure to provide interpretation services during Fernandez-Morales's medical appointments. ECF No. 25 at 10.

Fernandez-Morales has been incarcerated since July 24, 2018. ECF No. 59 at 11. He was transferred from High Desert State Prison to SDCC in September 2018. *Id.* On January 9, 2019, he submitted an emergency grievance complaining of a "really bad pain in [his] stomach." *Id.* at 23. A prison official responded that the emergency grievance form was not the proper vehicle for Fernandez-Morales's complaint and that he should have submitted a medical kite instead, but he also indicated that Fernandez-Morales would "be seen by medical when time permits." *Id.* Fernandez-Morales was seen the next day, January 10, 2019, at 2:23 a.m.—less than three hours after the infirmary was notified of his pain—and he informed the treatment provider that he "ate spicy food and [had] gastritis." *Id.* at 25. That provider gave him 30cc of liquid antacid (Mylanta), noted he was stable enough to return to general custody, and scheduled a follow-up appointment. *Id.*

Five days later, Dr. Landsman conducted the follow-up with Fernandez-Morales. *Id.* at 27. Dr. Landsman ordered a test to determine the helicobacter pylori levels in Fernandez-Morales's stomach. *Id.*; *see also* ECF No. 58 at 4 n.3 (explaining that H. Pylori bacteria is a common cause of stomach ulcers and may be present in more than half of the people in the world). The doctor also prescribed additional medicines and ordered him to be re-checked in two weeks. ECF No. 59 at 27. At that next visit, Dr. Landsman performed additional tests,

including an EKG and a gallbladder ultrasound. *Id.* at 41. The next day, Dr. Landsman informed Fernandez-Morales that he tested positive for high levels of H. Pylori. *Id.* at 27–28. On February 5, Dr. Landsman examined him again and diagnosed him with right lower lobe pneumonia. *Id.* at 27, 30. He prescribed Fernandez-Morales 1g of Rocephin and 500 mg of Keflex, and he ordered a re-check within three days. *Id.* at 41. At the follow-up appointment on February 8, Dr. Landsman examined Fernandez-Morales again, noted that the "cough [was] dry" and seemed less severe than the previous visit, and prescribed 100mg of Doxycycline. *Id.* at 31, 41. Fernandez-Morales did not attend the next appointment scheduled for February 19. *Id.* at 31. But over the next month, Dr. Landsman performed a variety of tests to rule out certain potential causes of Fernandez-Morales's stomach pain. On March 12, he ordered an abdominal ultrasound, which revealed that Fernandez-Morales had an enlarged liver but that his gallbladder was free of stones. *Id.* at 46. On March 25, he performed a physical examination and ordered additional tests to rule out pancreatitis. *Id.* at 42. He also prescribed Amoxicillin (an antibiotic) and ordered a comprehensive metabolic panel. *Id.* at 32, 42.

On that same date, Fernandez-Morales filed a grievance over the lack of interpreter at his appointments with Dr. Landsman and complained that Dr. Landsman was giving him "wrong answers and [performed the] wrong test (ultrasound)." ECF No. 59 at 62. Fernandez-Morales states that he knew the test was wrong because he is a doctor.[2] *Id.* The caseworker assigned to respond to the grievance gave the same response as he did the first time Fernandez-Morales initially grieved his stomach pain on January 9: that Fernandez-Morales must file a medical kite ("DOC 3098"), not a grievance form, for medical issues. *Id.* at 62–63. Fernandez-Morales filed various other grievances requesting an interpreter over the next few months, all of which were denied for administrative or procedural reasons. *Id.* at 64–80.

---

[2] Fernandez-Morales states that he "completed six years at Serafin University in Cuba and received a degree" as a general medical doctor. ECF No. 26 at 5.

## II. Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

## III. Discussion

The defendants move for summary judgment on five grounds: (1) Fernandez-Morales failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA); (2) Gutierrez did not personally participate in Fernandez-Morales's medical treatment; (3) the undisputed medical evidence on the record contradicts Fernandez-Morales's allegations of medical indifference against Dr. Landsman; (4) no evidence suggests that Fernandez-Morales was denied an interpreter or that the alleged language barrier led to the denial of proper medical care; and (5) the defendants are entitled to qualified immunity. ECF No. 58 at 2. Fernandez-Morales opposes summary judgment. ECF No. 63.

      A.  *There is no evidence that Gutierrez personally participated in the alleged constitutional deprivations.*

Gutierrez argues that he did not personally participate in any of the administrative or medical decisions that form the basis of this lawsuit. ECF No. 58 at 11–12. Fernandez-Morales responds that the SDCC Nursing Department responded to all of his medical kites and that Gutierrez, as the Director of Nursing, had "actual and constructive knowledge of the constitutional violations against plaintiff [but] did nothing about [them]." ECF No. 63 at 17–18. He asserts that Gutierrez may be liable under a theory of respondeat superior. *Id.*

Respondeat superior is a common law principle that holds a principal or employer liable for the torts and constitutional violations of their agents or employees. *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1577 n.28 (9th Cir. 1990). However, a "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in . . . the violations[] or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) ("[E]ach government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

Fernandez-Morales does not provide any evidence demonstrating that Gutierrez participated in his medical care or in the alleged denial of a Spanish-speaking interpreter during his medical appointments. While he asserts that Gutierrez had knowledge of the thirty-five medical kites that he submitted in 2019, none of the responses to those kites were signed by Gutierrez or otherwise indicate that Gutierrez was involved in the responses. ECF No. 59 at 23, 62–67, 82–85, 91, 95–130. Some of the signatures are illegible, but Gutierrez swore under penalty of perjury that he "had no involvement with [the] kites nor do they contain [his] signature." Gutierrez Decl., *id.* at 5. He adds that he "did not participate in Fernandez[-Morales's] medical treatment[,]" and was not involved in the processing of any grievances filed by Fernandez-Morales. *Id.* Fernandez-Morales argues that his "allegations that Gutierrez directly participated in the decisions to deny care and an interpreter are sufficient to state a . . . claim against Gutierrez for money damages in his individual capacity," ECF No. 63 at 17, but "conclusory,

speculative testimony in . . . moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Kadiyan v. Medtronic*, 2011 WL 13142145, at *6 (C.D. Cal. Apr. 8, 2011) (citing *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979)). Because the undisputed evidence in this case suggests that Gutierrez was not involved in (1) any of the decisions surrounding the instances of medical care (or lack thereof) or (2) any of the decisions surrounding the provision (or lack thereof) of interpretation services, I grant Gutierrez summary judgment on the claims brought against him.

      B.   *There is no evidence that Landsman acted with deliberate indifference to Fernandez-Morales's medical needs.*

          1.   *Summary judgment is appropriate on Fernandez-Morales's claim for improper medical treatment.*

Fernandez-Morales alleges that Dr. Landsman "provided [him] the wrong form of treatment" by prescribing only ibuprofen to treat his gastritis and failing to provide an "assessment of what really caused the abdominal pain, cramps, etc." ECF No. 26 at 7. He adds that Dr. Landsman caused a "five[-]month[] delay" in ordering the H. Pylori test. *Id.* at 6. The undisputed evidence, however, suggests that Dr. Landsman did far more than provide ibuprofen and that he ordered the H. Pylori test almost immediately after seeing Fernandez-Morales, not five months later.

"The government has an obligation under the Eighth Amendment to provide medical care for those whom it punishes by incarceration." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation and quotation marks omitted). To prevail on a deliberate-indifference claim, a plaintiff must show "a serious medical need" and that "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Dr. Landsman does not dispute that Fernandez-Morales had a serious medical need

(peptic ulcer disease and high levels of H. Pylori), but he does dispute that a reasonable jury could find that he was deliberately indifferent to that need. ECF No. 58 at 13. Deliberate indifference may be demonstrated by "a purposeful act or failure to respond to a prisoner's pain or possible medical need and [] harm caused by the indifference." *Jett*, 439 F.3d at 1096.

      The undisputed evidence in this case suggests that Dr. Landsman took appropriate affirmative actions to treat Fernandez-Morales and that Dr. Landsman did not fail to act in any relevant way. Fernandez-Morales alleges that Dr. Landsman's actions "caused him to [develop] severe gastritis," ECF No. 26 at 6, but Dr. Landsman diagnosed Fernandez-Morales with gastritis at the very first appointment. Jan. 9 Med. R., ECF No. 59 at 25. Dr. Landsman also ordered a number of tests, including a test for H. Pylori, following that first meeting. *Id.* at 27. The H. Pylori test was conducted on January 30, 2019, approximately three weeks after Fernandez-Morales first grieved his medical pain, *id.* at 23–28, not after a five-month delay, as Fernandez-Morales alleges. ECF No. 26 at 6. In direct response to the elevated H. Pylori levels, Dr. Landsman prescribed a variety of treatments, including 1g of Rocephin and 500 mg of Keflex. ECF No. 59 at 30, 41. Fernandez-Morales's argument that Dr. Landsman misdiagnosed his medical condition is not based in fact, nor does he provide any medical justification for that opinion. ECF No. 63 at 4. Rather, Fernandez-Morales lodges personal attacks on Dr. Landsman for other instances (not pertinent to this case) in which Dr. Landsman was reprimanded by the state medical board. *Id.* at 4–5. Of course, Dr. Landsman's treatment of other patients in 2011 is not probative as to whether he acted with deliberate indifference in this matter. Because Fernandez-Morales does not provide any medical evidence suggesting that Dr. Landsman's prescribed course of treatment was "deliberately indifferent" to his medical need, there is no genuine dispute of material fact as to that treatment. Summary judgment is thus appropriate on Fernandez-Morales's first claim against Dr. Landsman.

## 2. *Summary judgment is appropriate on Fernandez-Morales's claim for failure to provide an interpreter.*

Fernandez-Morales also asserts that Dr. Landsman was deliberately indifferent to his medical needs by failing to furnish a Spanish-language interpreter during his medical appointments. ECF No. 26 at 7–8. As the Ninth Circuit has recognized, "[a]n impenetrable language barrier between doctor and patient can readily lead to misdiagnoses and therefore pain and suffering. This type of language problem . . . can contribute to unconstitutional deficiencies in medical care." *Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995).

But the defendants dispute Fernandez-Morales's allegations and assert that he *was* provided with a Spanish-language interpreter during his medical appointments on multiple occasions. Manuel Tam, a correctional officer at SDCC, declares that he is fluent in Spanish and "[o]n various occasions, [has] been asked to translate for Yoandy Fernandez[-]Morales." ECF No. 59 at 21. He "recall[s] being asked to translate for him while working [his] post at the SDCC medical department." *Id.* Dr. Carlos Calderone, a dentist at SDCC, also declares that he is fluent in Spanish and on "a couple of occasions, [] was asked to translate for Yoandy Fernandez[-]Morales." *Id.* at 18. Specifically, he recalls "translating conversations between [plaintiff] and his physician related to [his] complaint of gastrointestinal issues." *Id.* And for his part, Dr. Landsman declared under penalty of perjury that he "did not have difficulty understanding [plaintiff] and [he] was able to communicate with [his] patient." *Id.* at 9.

Ultimately, the uncontroverted evidence on the record suggests that Fernandez-Morales was provided with Spanish-language interpretation for some, if not all, of his medical appointments at SDCC. Fernandez-Morales does not demonstrate that there was a communication barrier or that such a barrier substantively affected the course of treatment prescribed to him, nor does he demonstrate harm—beyond the harm he suffered as a result of his initial gastritis—due to any communication barrier. For that reason, there is no genuine dispute of material fact that Dr. Landsman acted deliberately indifferent toward Fernandez-Morales in

any aspect of his treatment. Summary judgment is thus appropriate on Fernandez-Morales's second claim against Dr. Landsman.

IV. **Motion for judicial action**

Finally, Fernandez-Morales moves for judicial action, requesting a disposition in this matter. ECF No. 69. Because I am granting the defendants' motion for summary judgment, there is no need for further judicial action. I therefore deny the motion as moot.

V. **Conclusion**

IT IS THEREFORE ORDERED that Fernandez-Morales's motion for judicial action **[ECF No. 69] is DENIED as moot.**

IT IS FURTHER ORDERED that the defendants' motion for summary judgment **[ECF No. 58] is GRANTED**. The Clerk of Court is directed to enter judgment accordingly and CLOSE THIS CASE.

DATED: June 8, 2023

_____
Cristina D. Silva
United States District Judge

9